IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN LEBOON,<br>    *Plaintiff, Pro Se* | :<br>:<br>: | CIVIL ACTION |
| v. | :<br>: | |
| EQUIFAX INFORMATION<br>SERVICES, LLC,<br>    *Defendant.* | :<br>:<br>:<br>: | NO. 18-1978 |

## MEMORANDUM

PRATTER, J.                                                                                                                                                                                    JULY 15, 2019

*Pro Se* Plaintiff Steven Leboon alleges that Equifax Information Services, LLC violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, by including a collections account from DS Waters of America, Inc. on Mr. Leboon's credit report. Specifically, Mr. Leboon alleges that Equifax failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of his credit report in violation of 15 U.S.C. § 1681e(b) (Count II); failed to conduct a reasonable reinvestigation of his credit file in violation of 15 U.S.C. § 1681i (Counts I, III, and VI); failed to provide him access to his credit file upon request in violation of 15 U.S.C. § 1681g (Count V[1]); and willfully violated these provisions of the FCRA, triggering statutory and punitive damages under 15 U.S.C. § 1681n (Count VII). Mr. Leboon also asserts a Pennsylvania state law claim for the tort of "outrage," more commonly referred to as intentional infliction of emotional distress (Count IV).

Equifax moves for dismissal of all of Mr. Leboon's claims. The Court will dismiss Mr. Leboon's Section 1681e(b) and 1681i claims because Mr. Leboon failed to allege how Equifax's

---

[1]     Mr. Leboon incorrectly labeled his Section 1681g claim as a second Count IV. The Court will refer to Mr. Leboon's Section 1681g claim as Count V.

1

reporting of the DS Waters trade line was factually inaccurate. The Court will also dismiss Mr. Leboon's intentional infliction of emotional distress claim because Equifax's alleged conduct does not rise to the level of atrocity needed to sustain a claim for intentional infliction of emotional distress under Pennsylvania law.[2] However, the Court will not dismiss Mr. Leboon's Section 1681g claim because he sufficiently pleaded that Equifax failed to provide him access to his credit report upon request. And because Mr. Leboon pleaded that Equifax willfully ignored his requests for access to his credit report, Mr. Leboon may, at this time, pursue statutory and or punitive damages under Section 1681n.

## BACKGROUND

Steven Leboon is a "consumer" as defined by 15 U.S.C. § 1681a(c). Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f). In April 2017, Mr. Leboon reviewed a copy of his credit report produced by Equifax. One of the trade lines reflected a collections account reported to Equifax by the Collections Bureau of America, acting on behalf of DS Waters of America, Inc. Amend. Compl. at ¶ 13. Shortly thereafter, Mr. Leboon informed Equifax, among other things, that he believed the DS Waters trade line was "false and improper" and requested that Equifax remove it from his credit report. *See* Exh. B to Amend. Compl. Mr. Leboon sent additional letters to Equifax regarding the DS Waters trade line in July 2017. *See* Exh. D to Amend. Compl. A review of these letters, which are attached to Mr. Leboon's Amended Complaint, reveals that Mr. Leboon alleges that the DS Waters trade line should not have been

---

[2] The Section 1681e(b) and 1681i claims will be dismissed without prejudice because it is plausible that Mr. Leboon may amend his complaint to address the deficiencies. However, the intentional infliction of emotional distress claim will be dismissed with prejudice because any amendment to this claim would be futile. *See Ray v. First Nat'l Bank of Omaha*, 413 F. App'x 427, 430 (3d Cir. 2011) ("A district court should not dismiss a *pro se* complaint without allowing the plaintiff an opportunity to amend his complaint unless an amendment would be inequitable or futile.").

2

included on his credit report for three reasons: (1) it was not an "FCRA credit account"; (2) no court had entered judgment that he owed the balance; and (3) his contract with DS Waters called for billing disputes to be resolved through arbitration. *See* Exhs. B and D to Amend. Compl.

In August 2017, Equifax informed Mr. Leboon that it had "researched the collection account" and "verified that this item ha[d] been reported correctly." *See* Exh. F to Amend. Compl. Mr. Leboon alleges that Equifax failed to reasonably investigate the DS Waters trade line and failed to delete it from his credit report. Amend. Compl. at ¶ 37. He further alleges that he was subsequently denied credit by three banks because of the presence of the "inaccuracies of the tradelines" on his credit report. *Id.* at ¶ 18.

In May 2018, Mr. Leboon filed this lawsuit against Equifax. Originally, he asserted that Equifax: (1) violated 15 U.S.C. § 1681s-2(b) by failing to remove the allegedly inaccurate information from his credit report; (2) committed common law negligence with respect to the same, and (3) committed civil conspiracy with respect to the same. The Court dismissed Mr. Leboon's original complaint because 15 U.S.C. § 1681s-2(b) applies to furnishers of information under the FCRA, not to consumer reporting agencies like Equifax, his common law negligence claim was preempted by the FCRA, and—without an underlying violation of law—Mr. Leboon could not sustain his civil conspiracy claim. The Court granted Mr. Leboon leave to amend.

Thereafter, Mr. Leboon filed his Amended Complaint. In addition to claims concerning the allegedly inaccurate DS Waters trade line, Mr. Leboon asserts that, in June 2018, while this case was pending, Equifax blocked him from accessing his credit report. Mr. Leboon states that he complained to Equifax for "weeks" about being unable to access his credit file. *Id.* at ¶ 27. Equifax allegedly ignored Mr. Leboon's requests until Mr. Leboon sent an email to Equifax's

3

counsel on June 22, 2018 demanding access. *Id.* at ¶ 26. Mr. Leboon admits that Equifax gave him access to his credit file three days later on June 25, 2018. *Id.* at ¶ 27.

Equifax now moves to dismiss Mr. Leboon's Amended Complaint.

## LEGAL STANDARD

At the outset, the Court notes that Mr. Leboon's *pro se* pleading must be "liberally construed." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *see also Bieros v. Nicola,* 839 F. Supp. 332, 334 (E.D. Pa. 1993).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2). However, "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and quotations omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also*

*Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). Also, the Court must accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

That admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions") (citations omitted). If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## DISCUSSION

Equifax filed this motion to dismiss under Fed. R. Civ. P. 12(b)(6) and alleges that all of Mr. Leboon's claims fail as a matter of law. First, Equifax argues that Mr. Leboon's Section 1681e(b) and 1681i claims fail because Mr. Leboon did not allege that the DS Waters trade line was factually inaccurate. Second, Equifax argues that Mr. Leboon's Section 1681g claim fails because Equifax provided Mr. Leboon his credit file three days after Mr. Leboon made his request to Equifax's counsel. Third, Equifax argues that Mr. Leboon cannot pursue statutory or punitive

damages pursuant to Section 1681n because his underlying FCRA claims fail. And finally, Equifax argues that Mr. Leboon did not adequately plead his claim for intentional infliction of emotional distress.

The Court first addresses Mr. Leboon's FCRA claims, and then Mr. Leboon's intentional infliction of emotional distress claim.

### I. Mr. Leboon's FCRA Claims

In his Amended Complaint, Mr. Leboon asserts claims under four provisions of the FCRA: (A) 15 U.S.C. § 1681e(b) (Count II); (B) 15 U.S.C. § 1681i (Counts I, III, and VI); (C) 15 U.S.C. § 1681g (Count V); and (D) 15 U.S.C. § 1681n (Count VII).

#### *A. Section 1681e(b) and Section 1681i Claims*

Section 1681e(b) requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). A consumer asserting a violation of Section 1681e(b) must plead four elements: (1) inaccurate information was included on the consumer's credit report; (2) the inaccuracy was due to the consumer reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered an injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate information. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010) (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996)).

Section 1681i requires consumer reporting agencies to "conduct a reasonable reinvestigation" if a consumer disputes information contained in his or her file and notifies the agency. *Id.* at § 1681i(a)(1)(A). A consumer reporting agency is liable for failing to reinvestigate under Section 1681i if it "had a duty to do so, and . . . would have discovered a discrepancy had it undertaken a reasonable investigation." *Cortez*, 617 F.3d at 713 (citing *Cushman v. Trans Union*

6

*Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)). As with claims under Section 1681e(b), "[a] claim under 1681i will . . . fail if the consumer cannot show that the information in his or her file was inaccurate." *Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 212 (E.D. Pa. 2007) (citing *Cushman*, 115 F.3d at 226–27).

Throughout Mr. Leboon's Amended Complaint, he alleges—in conclusory fashion—that Equifax reported an "inaccurate," "fraudulent," and "illegal" trade line in his consumer report concerning a collections account belonging to DS Waters. Although Mr. Leboon does not explain how or in what way the DS Waters trade line was inaccurate in his Amended Complaint, he attaches a series of letters he sent to Equifax pertaining to this dispute. A liberal reading of these letters suggests that Mr. Leboon believes the DS Waters trade line was inaccurate for three reasons: (1) it was not an "FCRA credit account" and should not have been reported on his consumer report at all; (2) no court had entered a judgment stating that he owed the balance; and (3) DS Waters was contractually required to arbitrate any disputes it had with Mr. Leboon but did not do so. *See* Exhs. B and D to Amend. Compl.

However, none of these alleged "inaccuracies" support Mr. Leboon's claims pursuant to Sections 1681e(b) or 1681i. First, research reveals no legal authority prohibiting credit reporting agencies from reporting collections accounts concerning services contracts—as opposed to credit accounts—on a consumer report. Mr. Leboon entered into a contract with DS Waters. *See* Exh. D to Amend. Compl. His account, if unpaid, was appropriately sent to a collections agency. The failure to repay the debt bears on creditworthiness and is properly included in a consumer report. *See* 15 U.S.C. § 1681a(d)(1) (defining a "consumer report" as a communication of "any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, [or] credit capacity . . . ."); *see also Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876,

891 (9th Cir. 2010) ("[A] consumer who avails herself of a good *or service* but defaults on payment would be considered less creditworthy than one who does not . . . .") (emphasis added). Thus, the fact that the DS Waters trade line did not reflect a "credit account" does not make it inaccurate under the FCRA.

Second, Mr. Leboon cites no authority for his apparent argument that consumer reporting agencies are prohibited from reporting collections accounts without a court judgment. And the Court's independent research reveals no such requirement. Therefore, the fact that there was no court judgment stating that Mr. Leboon owed DS Waters pursuant to the contract did not make it legally or factually inaccurate under the FCRA.

Finally, Mr. Leboon cannot rely on his claim that the DS Waters trade line was inaccurate because DS Waters did not fulfill its contractual obligation to arbitrate its dispute with Mr. Leboon because that is not the type of patent inaccuracy required to support claims under Sections 1681e(b) and 1681i. As this Court explained in a recent opinion, *Berkery v. Equifax Info. Servs. LLC*, No. 18-3417, 2019 U.S. Dist. LEXIS 73906, at *9–12 (E.D. Pa. May 1, 2019), several courts of appeals in other circuits have concluded that consumer reporting agencies are not required to investigate the *legal* validity of the underlying debts they report. *See DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68–69 (1st Cir. 2008); *Carvalho*, 629 F.3d at 891–92; *Wright v. Experian Info. Solus., Inc.*, 805 F.3d 1232, 144–45 (10th Cir. 2015). Rather, credit reporting agencies are only liable for patent, factual inaccuracies contained in credit reports.

For example, in *Carvalho*, the plaintiff admitted that a medical debt of $118 was technically accurate but felt that the debt was misleading because, she argued, her insurer should have paid the bill. 629 F.3d at 891.[3] The Court of Appeals for the Ninth Circuit concluded that,

---

[3] The plaintiff in *Carvalho* brought claims under the California Consumer Credit Reporting Agencies Act (CCRAA). 115 F.3d at 889. The court applied FCRA case law because the CCRAA

8

because consumer reporting agencies "are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Id.* The court also concluded that consumers disputing the legal validity of debts should attempt to solve the issue with the creditor first because the creditor is in the best position to conduct an investigation. *Id.* at 892.

Although the Third Circuit Court of Appeals has not yet ruled on this issue, this Court adopted the reasoning of the First, Ninth, and Tenth Circuit Courts of Appeals in *Berkery* to conclude that consumer reporting agencies are not required to referee disputes between a consumer and a creditor. 2019 U.S. Dist. LEXIS 73906, at *12–13.

Here, Mr. Leboon's Section 1681e(b) and 1681i claims fail because, as currently pleaded, his dispute centers on the validity of the underlying debt and not on a factual inaccuracy included on his credit report. Mr. Leboon does not contest that he had a contract with DS Waters, and, in fact, he attaches a copy of his contract with DS Waters to his Amended Complaint. *See* Exh. D to Amend. Compl. And Mr. Leboon does not claim that the nature or amount of the debt owed was factually inaccurate. Rather, Mr. Leboon argues that Equifax's reporting of the DS Waters account on his credit report was unlawful because "pursuant to the [DS Waters] contract[,] all disputes with this company (according to their own paperwork) must be referred to a national arbitrator for handling." *Id.* A reinvestigation of Mr. Leboon's claims would have required Equifax to decide whether DS Waters was legally obligated to arbitrate with Mr. Leboon prior to reporting his account. "This is not a factual inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather a legal issue that a credit agency . . . is neither qualified nor obligated to resolve under the FCRA." *DeAndrade*, 523 F.3d at 68.

---

is substantially based on the FCRA. *Id.* (citing *Olson v. Six Rivers Nat'l Bank*, 3 Cal. Rptr. 3d 301, 309 (Cal. Ct. App. 2003)).

The three alleged inaccuracies highlighted by Mr. Leboon cannot support his Section 1681e(b) and 1681i claims. Without them, the Amended Complaint includes nothing but conclusory allegations that the DS Water trade line was "inaccurate," "fraudulent," and "illegal."[4] These bare-bones allegations are insufficient to apprise Equifax of the claims against it. *See Johnson v. Trans Union LLC*, No. 12-5272, 2013 U.S. Dist. LEXIS 71538, at *9–10 (E.D. Pa. May 21, 2013) (dismissing FCRA claims because the plaintiff "merely alleg[ed] in a general manner that there [was] false information on his credit report"); *Wright v. Portfolio Recovery Affiliates*, No. 09-612, 2011 U.S. Dist. LEXIS 33612, *11–12 (E.D. Pa. Mar. 30, 2011) (dismissing Section 1681e(b) and 1681i claims because the plaintiff's "bare bone allegations" were "conclusory, merely mirror[ed] the statute, and provided[ed] the defendants insufficient facts of the alleged claims against them."); *Despot v. Allied Interstate, Inc.*, No. 15-15, 2016 U.S. Dist. LEXIS 122735, at *5–6 (W.D. Pa. Sept. 12, 2016) (dismissing Section 1681i claims because the plaintiff "repeatedly [made] conclusory statements that his credit reports contained 'incomplete and inaccurate information,'" but did not "allege that any substantive information [was] inaccurate"). Therefore, Mr. Leboon's 1681e(b) and 1681i claims will be dismissed without prejudice.[5]

---

[4] Mr. Leboon alleges that Equifax removed the DS Waters trade line from his credit report in June 2018 and argues that, in doing so, Equifax conceded that the trade line was inaccurate. *See* Amend. Compl. at ¶¶ 23–28. However, none of the exhibits to the Amended Complaint and nothing within the Amended Complaint itself suggests that Equifax removed the DS Waters trade line because it was factually inaccurate. Therefore, the fact that Equifax removed the DS Waters trade line in June 2018 is not enough to sustain Mr. Leboon's claims.

[5] Given Mr. Leboon's *pro se* status, the Court will give him one final opportunity to amend his complaint to replead his Section 1681e(b) and 1681i claims. If Mr. Leboon intends to do so, he must file a motion for leave to file a second amended complaint by August 9, 2019. He shall attach a proposed Second Amended Complaint to any such motion that clearly sets forth how the inclusion of the DS Waters trade line in his credit report was *factually* inaccurate. Mr. Leboon is instructed that he should only replead his Section 1681e(b) and 1681i claims if he believes in *good faith* that he can remedy the deficiencies highlighted by the Court above.

The Court notes that Mr. Leboon recently filed a Motion for Leave to File a Second Amended Complaint. *See* Doc. No. 23. In this motion, Mr. Leboon does not ask to amend the

## B. *Section 1681g Claim*

In relevant part, 15 U.S.C. § 1681g(a)(1) states that every consumer reporting agency "shall, upon request . . . clearly and accurately disclose to the consumer all information in the consumer's file." Mr. Leboon alleges that Equifax violated this provision when it barred him from accessing his credit report in June 2018 when this case was pending before the Court. *See* Amend. Compl. at ¶¶ 25–27, 49. Specifically, Mr. Leboon states that he complained about being unable to access his credit file to Equifax for "weeks." *Id.* at ¶ 27. Equifax allegedly ignored Mr. Leboon's requests until Mr. Leboon sent an email to Equifax's counsel on June 22, 2018 demanding access. *Id.* at ¶ 26. Mr. Leboon admits that Equifax gave him access to his credit file three days later on June 25, 2018. *Id.* at ¶ 27.

Equifax argues that Mr. Leboon fails to state a claim under Section 1681g because Equifax gave him access to his credit file within three days of his email to Equifax's counsel. Mot. to Dismiss at 8. Compared to other cases in which courts have allowed plaintiffs to pursue Section 1681g claims for a consumer reporting agency's complete failure to disclose a credit file to a consumer upon request, Equifax argues that this three day timeline is insufficient to state a claim. *Id.* (citing *Spector v. Equifax Info. Servs.*, 338 F. Supp. 2d 378, 389 (D. Conn. 2004) (at the summary judgment stage, concluding that a jury could find that a month lag time between the

---

claims currently pleaded in his Amended Complaint. Rather, he asks for leave to add new allegations concerning Equifax's alleged second effort to block him from accessing his credit report in June 2019. Mr. Leboon, however, did not attach a proposed Second Amended Complaint to his motion. Therefore, the Court will deny Mr. Leboon's motion without prejudice. Mr. Leboon may include new factual allegations concerning Equifax's alleged second effort to block him from accessing his credit report in his proposed Second Amended Complaint. However, he must follow the procedure set out above.

If Equifax disputes any such motion filed by Mr. Leboon, it must file a response to Mr. Leboon's motion for leave to file a second amended complaint within twenty-one (21) days of the docketing of the motion.

11

consumer's request and the consumer reporting agency's response constitutes a violation of the consumer's right to get a copy of his credit report "upon request" under Section 1681g).

However, in making this comparison, Equifax ignores Mr. Leboon's allegation that he had been requesting access to his credit file for "weeks" prior to his June 22, 2018 email. Amend. Compl. at ¶ 27. At this stage in the litigation, the Court must accept Mr. Leboon's allegations as true. Equifax cites no cases—and research reveals none—suggesting that Mr. Leboon's claim of being ignored for "weeks" is insufficient to state a claim under Section 1681g. Rather, the one case cited by Equifax on this issue supports a conclusion that "'upon request' naturally connotes an immediacy." *Spector*, 338 F. Supp. 2d at 389 n.3. Therefore, the Court denies Equifax's Motion to Dismiss as to Mr. Leboon's 1681g claim. Equifax is free to challenge this claim again at a later stage in the litigation after a factual record is developed concerning the timeline at issue.

### *C. Section 1681n*

Mr. Leboon alleges willful noncompliance with the FCRA and seeks statutory and punitive damages pursuant to 15 U.S.C. § 1681n. To show willful noncompliance with the FCRA, Mr. Leboon must prove that Equifax "knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive." *Cushman*, 115 F.3d at 226 (citing *Philbin* 101 F.3d at 970). "A company cannot be said to have willfully violated [the] FCRA if the company acted on a reasonable interpretation of [the] FCRA's coverage." *Fuges v. Southwest Fin. Servs., Ltd.*, 707 F.3d 241, 248 (3d Cir. 2012).

Equifax argues that because Mr. Leboon failed to plead a negligent violation of the FCRA, he certainly failed to make out a willful violation of the FCRA. Mot. to Dismiss at 8. However, as discussed above, Mr. Leboon sufficiently pleaded his Section 1681g claim. Equifax does not offer any other arguments for barring Mr. Leboon from seeking damages for proven willful violations under Section 1681n and does not suggest that a reasonable interpretation of the FCRA

12

would permit it to ignore a consumer's requests for his consumer report for weeks. Although Mr. Leboon may not ultimately be able to prove that Equifax acted either knowingly or recklessly, "the Court remains mindful of the fundamental tenent that a plaintiff, having set forth a legally and factually viable cause of action, is entitled to the benefit of discovery before being put to his or her proofs." *Dennis v. Trans Union, LLC*, No. 14-2865, 2014 U.S. Dist. LEXIS 148753, at *31 (E.D. Pa. Oct. 20, 2014). Therefore, Mr. Leboon may, at this time, continue to pursue damages for a willful violation under Section 1681n.

## II. Mr. Leboon's State Law Tort of Outrage Claim

Finally, in Count IV, Mr. Leboon asserts a claim for the tort of "outrage"—more commonly referred to as intentional infliction of emotional distress—under Pennsylvania state law. *See Hoffman v. Memorial Osteopathic Hosp.*, 492 A.2d 1382, 1385–86 (Pa. Super. Ct. 1985) (using the "tort of outrage" and "intentional infliction of emotional distress" interchangeably). Mr. Leboon's intentional infliction of emotional distress claim is based on the same conduct underlying his Section 1681e(b) and 1681i claims, i.e. that Equifax deliberately and illegally reported the DS Waters trade line on his credit report and failed to reasonably investigate it following Mr. Leboon's complaints. Mr. Leboon alleges that Equifax's conduct caused him to be denied credit and that, as a result, "every bone in [his] body [was exacerbated] with stress" and he suffered from "PTSD." Amend. Compl. at ¶ 9.

Under Pennsylvania law, to establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate "intentional outrageous or extreme conduct by the defendants, which causes severe emotional distress to the plaintiff." *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)). In addition, a plaintiff "must suffer some type of resulting physical harm due to the defendant's outrageous conduct." *Id.* (citation and quotations omitted). Liability on an intentional infliction of emotional distress claim

13

"has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 231–32 (citation and quotations omitted). In keeping with these restrictive standards, the Pennsylvania Supreme Court has provided examples of conduct found to create a claim for intentional infliction of emotional distress, including conduct such as killing the plaintiff's child and, without notifying the authorities or medical personnel, burying the body in a field, or intentionally fabricating records suggesting that the plaintiff had killed another person. *Hoy v. Angelone*, 720 A.2d 745, 753–54 (Pa. 1998) (citing cases).

In contrast, courts in this circuit have dismissed claims for intentional infliction of emotional distress predicated on FCRA violations similar to those brought by Mr. Leboon. *See Estate of Rennick v. Universal Credit Servs., LLC*, No. 18-3881, 2019 U.S. Dist. LEXIS 6888, at *39–40 (E.D. Pa. Jan. 14, 2019) (allegations that the defendant inaccurately reported that the plaintiff was deceased in his credit report, which lead to the plaintiff being denied for a loan and caused him "emotional torment" for months, were insufficient to state a claim for intentional infliction of emotional distress); *Gagliardi v. Experian Info. Solus., Inc.*, No. 8-892, 2009 U.S. Dist. LEXIS 10741, at *2–3, *9–10 (W.D. Pa. Feb. 12, 2009) (allegations that the defendants willfully reported inaccurate information without an appropriate investigation were insufficient to state a claim for intentional infliction of emotional distress).

The Court does not doubt that Mr. Leboon sensed personal stress and anxiety relating to his dispute with Equifax. Even interpreted in a most indulgent light, however, the facts alleged by Mr. Leboon do not rise to the level of atrocity needed to sustain a claim for intentional infliction of emotional distress under Pennsylvania law. Therefore, the Court dismisses Mr. Leboon's intentional infliction of emotional distress claim with prejudice.

## CONCLUSION

For the reasons set out in this Memorandum, the Court grants in part and denies in part Equifax's Motion to Dismiss. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE