## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN LEBOON, | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| EQUIFAX INFORMATION | : | |
| SERVICES, LLC, | : | NO. 18-1978 |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                     FEBRUARY 6, 2020

The Court previously granted in part and denied in part Equifax Information Services, LLC's motion to dismiss Steven LeBoon's first amended complaint in which he alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, related to Equifax having included a collections account from DS Waters of America, Inc. on his credit report. Mr. LeBoon now seeks leave to file a second amended complaint pleading additional allegations in support of a new claim under 15 U.S.C. § 1681g and his previously dismissed claims under 15 U.S.C. §§ 1681e(b) and 1681i.[1] Equifax opposes Mr. LeBoon's motion in its entirety.

For the reasons that follow, the Court denies Mr. LeBoon's motion for leave to file a second amended complaint.

### BACKGROUND AND PROCEDURAL HISTORY

In April 2017, Mr. LeBoon discovered what he believed to be a false and improper trade line on a copy of his Equifax credit report reflecting a collections amount from DS Waters of

---

[1]     Mr. LeBoon "has a long history of bringing innumerable actions in this Court and in state court" and "has been described as 'a serial *pro se* litigant' and 'zealously litigious.'" *LeBoon v. Scottrade, Inc.*, No. 18-2, 2018 WL 10128025, at *1 (E.D. Pa. Aug. 24, 2018) (quoting *Leboon v. Zurich Am. INS. Co.*, No. 15-05904, 2016 WL 1556011, at *1, *1 n.1 (E.D. Pa. Apr. 18, 2016), *aff'd*, 673 F. App'x 173 (3d Cir. 2016)).

America, Inc. He informed Equifax of his concerns and requested the trade line be removed. Equifax completed an investigation and informed Mr. LeBoon in August 2017 that the trade line had been verified as correctly reported.

Mr. LeBoon claims that Equifax's investigation was unreasonable and that three banks subsequently denied him credit because the trade line remained on his credit report. He sued Equifax in May 2018, claiming Equifax had committed violations of the FCRA, common law negligence, and civil conspiracy by failing to remove the allegedly inaccurate information from his credit report. Granting a motion to dismiss by Equifax, the Court dismissed Mr. LeBoon's complaint but granted him leave to amend.

In his first amended complaint, Mr. LeBoon asserted claims under four provisions of the FCRA—15 U.S.C. §§ 1681e(b), 1681i, 1681g, and 1681n—as well as a claim for the tort of "outrage," which might more commonly be known as intentional infliction of emotional distress. Mr. LeBoon also added factual allegations in support of his Section 1681g claim that Equifax had blocked him from accessing his credit report while the litigation before the Court was pending. According to Mr. LeBoon, Equifax repeatedly ignored his requests for access for weeks, only finally responding and resolving the issue after he sent an email directly to Equifax's counsel. Equifax moved to dismiss Mr. LeBoon's first amended complaint.

The Court granted the motion to dismiss as to Mr. LeBoon's claims under Sections 1681e(b) and 1681i because none of the inaccuracies he alleged against Equifax constituted a factual inaccuracy for which Equifax could be held liable. The Court also dismissed with prejudice Mr. LeBoon's claim for "outrage." The Court did not dismiss Mr. LeBoon's Section 1681g claim and permitted Mr. LeBoon to pursue statutory and/or punitive damages under Section 1681n.

Because of Mr. LeBoon's *pro se* status, the Court explained that he would have "one final opportunity to amend his complaint to replead his Section 1681e(b) and 1681i claims." July 15, 2019 Mem. 10 n.5 (Doc. No. 26). The Court further instructed Mr. LeBoon that any proposed second amended complaint must "clearly set[] forth how the inclusion of the DS Waters trade line in his credit report was *factually* inaccurate" and that "he should only replead his Section 1681e(b) and 1681i claims if he believes in *good faith* that he can remedy the deficiencies highlighted by the Court." *Id.*

Mr. LeBoon now asks the Court for leave to file his proposed second amended complaint. In addition to his original Section 1681g and 1681n claims, Mr. LeBoon seeks to bring an additional Section 1681g claim, alleging that Equifax prevented him from accessing his credit file for a second time in 2019. He also repleads his Section 1681e(b) and 1681i claims, alleging that the DS Waters trade line was factually inaccurate because the contract with DS Waters was signed by a woman and not Mr. LeBoon. Equifax opposes, arguing that Mr. LeBoon's proposed amendments to the complaint are futile.[2]

---

[2]   The Court notes that on August 19, 2019, Mr. LeBoon filed a motion to compel in which he asked the Court to grant his motion for leave to file a second amended complaint as unopposed. In support, Mr. LeBoon argued that Equifax's response to his motion had been due no later than August 14, 2019, and no response had been filed.

However, Mr. LeBoon is mistaken regarding Equifax's time to respond. On July 15, 2019, the Court ordered Mr. LeBoon to file any motion for leave to file a second amended complaint by August 9, 2019. *See* July 15, 2019 Order (Doc. No. 27). In that same order, the Court instructed Equifax that if it "opposes any such motion filed by Mr. LeBoon, it shall file a response *within twenty-one (21) days* of the docketing of the motion." *Id.* (emphasis added). Mr. LeBoon filed his motion for leave to file a second amended complaint on July 31, 2019. *See* Second Mot. for Leave to File Second Am. Compl. (Doc. No. 29). This gave Equifax until August 21, 2019 to file its response, making Mr. LeBoon's August 19, 2019 motion to compel premature. Equifax timely filed its response in opposition on August 21, 2019. *See* Resp. in Opp'n (Doc. No. 32).

Incorrectly believing that Equifax's response was untimely, Mr. LeBoon also filed a request to strike Equifax's response in opposition. *See* Req. to Strike (Doc. No. 33). To support his argument that Equifax's response was due no later than August 14, 2019, Mr. LeBoon relied on Local Rule of Civil Procedure 7.1, which states, "*Unless the Court directs otherwise*, any party opposing the motion shall serve a brief in opposition together with such answer or other response that may be appropriate, within fourteen (14) days after service of the motion and supporting brief." E.D. Pa. Civ. R. 7.1(c) (emphasis added). Here,

3

## LEGAL STANDARD

At the outset, the Court notes that Mr. LeBoon's *pro se* filing will be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Due to an "understandable difference in legal sophistication," *pro se* litigants such as Mr. LeBoon are held to a "less exacting standard" than trained counsel. *Lopez v. Brown*, No. 04-6267, 2005 WL 2972843, at *2 (D.N.J. Nov. 4, 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

Under Rule 15(a)(2), a party may amend a pleading with leave from the Court, and "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "The policy favoring liberal amendment of pleadings is not, however, unbounded." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). "A district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005). Under this standard, the party opposing the amendment has the burden of showing "prejudice, bad faith, undue delay, or futility." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 700 (E.D. Pa. 2007).

An amendment is futile when the amended claims would be properly dismissed. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.") (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). "In assessing 'futility,' the District Court

---

the Court did so direct otherwise in its July 15, 2019 order when it gave Equifax 21 days—not 14—to respond to Mr. LeBoon's anticipated motion for leave to file a second amended complaint.

Because Equifax's response in opposition was timely in accordance with the Court's July 15, 2019 order, the Court denies both Mr. LeBoon's motion to compel and his request to strike.

applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434.

In evaluating the sufficiency of a complaint, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The Court must "accept all allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"). A court must also accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)).

## DISCUSSION

In his proposed second amended complaint, Mr. LeBoon repleads all of his claims from his first amended complaint except for his claim of "outrage," which the Court dismissed with

prejudice. He also raises a new Section 1681g claim related to an alleged second denial of access to his credit file in 2019, as well as additional allegations related to his Section 1681e(b) and 1681i claims in an effort to plead a factual inaccuracy. Equifax asks the Court to deny Mr. LeBoon leave to file his proposed second amended complaint, asserting that his new Section 1681g claim and his new allegations in support of his Section 1681e(b) and 1681i claims are insufficient to state claims upon which relief can be granted.

As explained below, because Mr. LeBoon has failed to allege (1) that Equifax did not timely respond to a request for a copy of his credit file disclosure in 2019 or (2) that the inclusion of the DS Waters trade line was factually inaccurate, the Court denies Mr. LeBoon's motion for leave to file a second amended complaint. The Court first addresses Mr. LeBoon's new Section 1681g claim followed by his Section 1681e(b) and 1681i claims.

## I.    Mr. LeBoon's New Section 1681g Claim

In relevant part, 15 U.S.C. § 1681g(a)(1) commands that "[e]very consumer reporting agency shall, upon request . . . clearly and accurately disclose to the consumer all information in the consumer's file." In Mr. LeBoon's first amended complaint, he alleged that Equifax violated this provision when it barred him from accessing his credit report in June 2018. The Court denied Equifax's motion to dismiss as to this claim, finding that Mr. LeBoon's allegation that he had requested access to his credit file for weeks to no avail was sufficient to state a claim.

In his proposed second amended complaint, Mr. LeBoon alleges that Equifax barred him from accessing his credit report a second time.[3] He claims that after he was finally granted access to his credit report on June 25, 2018, Equifax locked him out from accessing his consumer credit

---

[3]    These same allegations were the subject of a motion for a temporary restraining order filed by Mr. LeBoon on June 10, 2019. The Court denied Mr. LeBoon's motion because injunctive relief is not available to private litigants under the FCRA. *See* June 24, 2019 Order (Doc. No. 21).

file the next day. He claims that the lock remained in place until July 2, 2019 when the Consumer Financial Protection Bureau ("CFPB") ordered the file unlocked.

Mr. LeBoon provides additional context for these allegations in his memorandum in support of his motion for leave to file a second amended complaint. There, Mr. LeBoon explains that on June 2, 2019, he executed his wife's consumer credit file without any issues. Then, "within 4–6 minutes[] of extracting his wife's consumer credit file," Mr. LeBoon was "blocked again and not allowed to access his consumer credit file." Second Mot. for Leave to File Second Am. Compl. 2 (Doc. No. 29). Three days later on June 5, 2019, Mr. LeBoon reached out to counsel for Equifax to notify him of the block. According to Mr. LeBoon, counsel for Equifax responded that same day offering to provide him with a copy of his credit file. Mr. LeBoon declined the offer, citing the sensitive and private nature of his credit file. Mr. LeBoon asserts that he was eventually able to access his Equifax credit file after filing a complaint with the CFPB.

Equifax argues that permitting Mr. LeBoon to again amend his complaint to include this new Section 1681g claim would be futile because it fails to state a claim upon which relief can be granted. First, Equifax asserts that a claim under Section 1681g must allege that the plaintiff requested a copy of his credit file disclosure, and nowhere in Mr. LeBoon's proposed second amended complaint does he mention such a request. Second, Equifax claims that Mr. LeBoon's exhibits to the proposed second amended complaint and his memorandum in support of his motion for leave to file a second amended complaint establish that counsel for Equifax responded to Mr. LeBoon the same day as his request and offered to provide him with a copy of his credit file free of charge. Equifax argues that this offer via counsel fulfills the disclosure requirements under Section 1681g. Therefore, any amendment to Mr. LeBoon's complaint would be futile because he has not alleged a viable violation of Section 1681g.

The Court agrees. Mr. LeBoon attaches to his proposed second amended complaint an email thread between him and counsel for Equifax.[4] *See* Proposed Second Am. Compl. Ex. D (Doc. No. 29-1).[5] In that communications thread, Mr. LeBoon informed counsel for Equifax on June 5, 2019 that he was locked out of his credit file. Counsel for Equifax responded an hour and eight minutes later asking Mr. LeBoon if he would like a courtesy copy of his consumer disclosure, but Mr. LeBoon refused. As the Court has previously noted, Mr. LeBoon "provides no support for his apparent claim that it is a violation of 15 U.S.C. § 1681g for his credit file to be delivered to him via counsel." *See* June 24, 2019 Order (Doc. No. 21). Nor has additional research uncovered such support. Unlike his first amended complaint's Section 1681g claim, in which Equifax allegedly ignored Mr. LeBoon's requests for access to his credit file for weeks, Mr. LeBoon's newly added Section 1681g claim alleges no delay at all. Rather, Equifax offered to provide full disclosure of his requested credit file the very same day as his initial request, satisfying the requirements of Section 1681g. *See Spector v. Equifax Info. Servs.*, 338 F. Supp. 2d 378, 389 n.3 (D. Conn. 2004) ("The statutory language 'upon request' naturally connotes an immediacy, one that Equifax's normal policies apparently comply with by responding to request on the same day as received or within a few days thereafter.").

Without alleging a delayed response by Equifax, Mr. LeBoon's additional Section 1681g claim would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). Therefore, its inclusion in his proposed second amended complaint does not justify permitting an amendment.

---

[4]     In evaluating whether Mr. LeBoon's amendments would be futile under a Rule 12(b)(6) analysis, the Court may properly consider the exhibits to his proposed second amended complaint. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111 (3d Cir. 2018) ("As exhibits to her own complaint, these materials were appropriate to consider on a motion to dismiss.").

[5]     Mr. LeBoon's proposed second amended complaint contains two exhibits labeled "Exhibit D." The Court refers here to the second exhibit D.

## II. Mr. LeBoon's Section 1681e(b) and 1681i Claims

Section 1681e(b) requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). A consumer asserting a violation of Section 1681e(b) must plead four elements: (1) inaccurate information was included on the consumer's credit report; (2) the inaccuracy was due to the consumer reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered an injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate information. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010) (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996)).

Section 1681i requires consumer reporting agencies to "conduct a reasonable reinvestigation" if a consumer disputes information contained in his or her file and notifies the agency. 15 U.S.C. § 1681i(a)(1)(A). A consumer reporting agency is liable for failing to reinvestigate under Section 1681i if it "had a duty to do so, and . . . would have discovered a discrepancy had it undertaken a reasonable investigation." *Cortez*, 617 F.3d at 713 (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)). As with claims under Section 1681e(b), "[a] claim under 1681i will . . . fail if the consumer cannot show that the information in his or her file was inaccurate." *Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 212 (E.D. Pa. 2007) (citing *Cushman*, 115 F.3d at 226–27).

In its review of Mr. LeBoon's first amended complaint and exhibits, the Court deduced that Mr. LeBoon believed the DS Waters trade line on his credit report was inaccurate for three reasons: (1) it was not an FCRA credit account and should not have been reported on his consumer report at all; (2) no court had entered a judgment stating that he owed the balance; and (3) DS Waters was contractually required to arbitrate any disputes it had with Mr. LeBoon but did not do

so. The Court found that none of these three alleged inaccuracies could support a claim under Sections 1681e(b) and 1681i because (1) no legal authority prohibits credit reporting agencies from reporting collections accounts concerning services contracts on a consumer report; (2) no legal authority prohibits consumer reporting agencies from reporting collections accounts without a court judgment; and (3) consumer reporting agencies are only liable for patent, factual inaccuracies and are not required to investigate the legal validity of any underlying debts they report. Unable to rely on any of the three alleged inaccuracies, Mr. LeBoon's Section 1681e(b) and 1681i claims consisted of nothing but conclusory allegations that the trade line was inaccurate, fraudulent, and illegal. For these reasons, the Court dismissed Mr. LeBoon's Section 1681e(b) and 1681i claims, granting him "*one final opportunity to amend*" those claims if he could "clearly set[] forth how the inclusion of the DS Waters trade line in his credit report was *factually* inaccurate." July 15, 2019 Mem. 10 n.5 (Doc. No. 26) (first emphasis added).

Mr. LeBoon now seeks to avail himself of that opportunity. To show how the inclusion of the DS Waters trade line was factually inaccurate, Mr. LeBoon alleges for the first time in his proposed second amended complaint that he never had any relationship or valid contract with DS Waters. Rather, he claims that the contract with DS Waters was "signed by a third party woman and NOT Steven LeBoon, the Plaintiff." Proposed Second Am. Compl. ¶ 15 (Doc. No. 29-1). Mr. LeBoon claims that he realized the DS Waters contract he attached to his first amended complaint was illegible, and so he printed a new, clear copy to show that the signature is not his. Both copies of the contract are attached to his proposed second amended complaint as exhibits Y (new) and Z (original). The name on the service agreement under "Customer Information" on both exhibits is "Steve Leboon." Proposed Second Am. Compl. Exs. Y, Z (Doc. No. 29-1). The signature on the agreement is the same on both as well, although admittedly clearer on the new

10

version; the signature in question appears to be that of his wife, Cassandra LeBoon. *See id.*;

Proposed Second Am. Compl. Ex. X (Doc. No. 29-1) (attaching Mr. LeBoon's wife's consumer

credit file under the name "CASSANDRA LEBOON").

Equifax argues that this alleged factual inaccuracy fails for two reasons. First, Equifax

claims that Mr. LeBoon's allegation that he never had a contract with DS Waters should be

disregarded because it is contradicted by an exhibit attached to his proposed second amended

complaint. Second, Equifax asserts that even if the contract was signed by Mr. LeBoon's wife,

Cassandra LeBoon, the enforceability of that contract against Mr. LeBoon is a question of contract

and agency law and not factual inaccuracy. The Court addresses each argument in turn.

## A. Inconsistencies in Mr. LeBoon's Proposed Second Amended Complaint

If a plaintiff's "own exhibits contradict [his] allegations in the complaint, the exhibits

control." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018) (citations

omitted).

Here, Mr. LeBoon alleges that the DS Waters trade line being reported on his credit score

was factually inaccurate because he "never entered into a binding relationship" or "signed or

entered into any contractual relationship" with DS Waters, and he "does not have an account or

any service agreement with the DS Water entities or business and the signature who entered into

the agreement is a third party woman."[6] Proposed Second Am. Compl. ¶ 40. However,

Mr. LeBoon also attaches to his proposed second amended complaint a July 10, 2017 letter he sent

to Equifax's legal department. *See* Proposed Second Am. Compl. Ex. D (Doc. No. 29-1).[7] In that

---

[6]     Whether Mr. LeBoon physically signed a contract with DS Waters is a question of fact, but whether Mr. LeBoon nonetheless had or has a binding contractual relationship with DS Waters is a separate inquiry and a question of law. The Court need not accept Mr. LeBoon's legal conclusions as true.

[7]     As previously noted, Mr. LeBoon's proposed second amended complaint contains two exhibits labeled "Exhibit D." The Court refers here to the first exhibit D.

11

letter, Mr. LeBoon contests the inclusion of the DS Waters account on his credit file and states in relevant part:

> I am also enclosing the contract as official documentation (Exhibit A) from the water company *that I engaged* to prove to you of the unlawful transaction being reported under my Social Security number. . . . The third issue with this situation is that no where on *my contract* was my social security number. . . . Last, I have a photo of the driver picking up the cooler and the empty water bottles. I don't know what he did with *my inventory* – maybe it was lost, but that is not my fault.

*Id.* (emphasis added). The contract attached to that letter matches the contract he now contends cannot be his because it was signed by "a third party woman." *Compare id. with* Proposed Second Am. Compl. Exs. Y, Z (Doc. No. 29-1).

In this letter, Mr. LeBoon conclusively takes full ownership of the DS Waters contract, refers to it as his contract, and refers to DS Waters as the company that he himself engaged. This directly contradicts Mr. LeBoon's newfound position that he was never a party to that very contract, as well as his broader allegation that he never had any contract with DS Waters. The Court must not turn a blind eye to these contradictions because, in the face of contradictions between Mr. LeBoon's complaint and his own exhibits, "the exhibits control." *Vorchheimer*, 903 F.3d at 112.

With Mr. LeBoon's exhibits controlling, the Court finds that Mr. LeBoon's new allegation that he never had a contract with DS Waters is not credible and should be disregarded. However, understanding that Mr. LeBoon is a *pro se* (albeit serial) litigant, and because the exhibit does not directly contradict Mr. LeBoon's contention that he did not sign the contract, the Court will analyze whether Mr. LeBoon's allegation that a woman signed the contract constitutes a factual inaccuracy that could somehow save his Section 1681e(b) and 1681i claims.

**B. Whether Mr. LeBoon has Alleged a Factual Inaccuracy**

A plaintiff must plead a factual inaccuracy for his Section 1681e(b) and 1681i claims to survive a motion to dismiss. *See Berkery v. Equifax Info. Servs. LLC*, No. 18-3417, 2019 WL 1958567, at *3 (E.D. Pa. May 2, 2019) ("The Court grants the motion to dismiss as to both claims because [the plaintiff] failed to plead that a factual inaccuracy was included on his credit reports."). "To determine whether a consumer has identified a factual inaccuracy on his or her credit report . . . , 'the decisive inquiry' is whether the defendant credit bureau could have uncovered the inaccuracy 'if it had reasonably reinvestigated the matter.'" *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (quoting *Cushman*, 115 F.3d at 226).

In light of Mr. LeBoon's new allegations, his argument can be broken down into the following logical progression: First, a reasonable investigation would have uncovered that he did not sign the contract with DS Waters. Second, having discovered that Mr. LeBoon did not sign the contract with DS Waters, Equifax should have concluded that the associated debt could not be his. Third, Equifax proceeding to nonetheless report that unassociated debt on his credit report constituted a factual inaccuracy and violation of the FCRA.

However, the Court finds that this series of events does not lead to the same destination that Mr. LeBoon suggests. A reasonable investigation could uncover that Cassandra LeBoon, not Mr. LeBoon, signed the contract with DS Waters. That reasonable investigation, however, would also find that the very same contract was made in Mr. LeBoon's name, with "Steve Leboon" listed as the only individual under "Customer Information." Proposed Second Am. Compl. Exs. Y, Z (Doc. No. 29-1). Further examination of the contract would also reveal that the contract's signature block includes language under the heading "Important Terms and Conditions. Read Before Signing" stating in part:

You acknowledge that you are the Customer *or person authorized by the Customer* to accept the terms and conditions of this Agreement. You authorize DS Waters of America, Inc. ("DSW") to obtain your consumer credit report to determine your credit worthiness, and you understand and acknowledge DSW may report information about your DSW account to credit bureaus and similar institutions.

*Id.* And finally, Cassandra LeBoon's name is located on the contract only in that same signature

block on two lines respectively labeled "Customer *or Customer Representative's* Name" and

"Customer *or Customer Representative's* Signature." *Id.* (emphasis added).

Equifax's purpose in conducting such an investigation would be to determine whether it

had reported inaccurate information on Mr. LeBoon's credit report—i.e., whether the DS Waters

debt it reported actually belonged to Mr. LeBoon. To answer this inquiry, even if Equifax

uncovered each and every one of the above-mentioned facts, one question would remain: Is a

contract that was made in the customer's name, where the contract was signed by that customer's

legal spouse, and where the contract contemplates that an authorized representative of the customer

may sign and ratify the contract, valid and enforceable against the named customer? Put simply,

is the DS Waters contract enforceable against Mr. LeBoon?

But there is nothing simple about that question to a credit reporting agency because it is a

question of law, not fact.[8] *See Berkery*, 2019 WL 1958567, at *5 ("[I]t is difficult to see how even

---

[8]     Whether a plaintiff signed to an account can be a question of fact under different circumstances. For example, in *Wylie v. TransUnion, LLC*, No. 16-102, 2017 WL 835205 (W.D. Pa. Mar. 2, 2017), the plaintiff alleged that TransUnion began reporting a delinquent account on his credit report after his daughter filed for Chapter 13 bankruptcy even though he was not a cosigner on the account. TransUnion moved to dismiss the complaint, arguing in part that the plaintiff was attempting to collaterally attack the validity of his debt rather than contest a factual inaccuracy. In denying the motion to dismiss, the Court explained that the plaintiff's "primary contention is that he never cosigned the account—in other words, that the account simply does not belong to him. That is a factual question, which can be resolved without any inquiry into whether the debt is valid: either he cosigned the loan or he did not. " *Wylie*, 2017 WL 835205, at *4.
        Although at first blush Mr. LeBoon's contention that he never entered into an agreement with DS Waters sounds similar to the plaintiff's arguments in *Wylie*, there are additional complications at play. For example, in *Wylie*, the plaintiff attached to his complaint a proof of claim and note filed in the bankruptcy proceedings by the delinquent account's furnisher that listed the plaintiff's daughter as the only borrower. *See Wylie*, 2017 WL 835205, at *1. In contrast, Mr. LeBoon's attached contract document carries his own name as the customer of the service agreement. Once Mr. LeBoon's sweeping allegations are closely

the most thorough reinvestigation of facts could have solved the issue at hand."). And such a

contractual dispute is exactly the type of legal issue that courts have held credit reporting agencies

have no duty under the FCRA to resolve. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d

876, 891 (9th Cir. 2010) ("Because [credit reporting agencies] are ill equipped to adjudicate

contract disputes, courts have been loath have been loath to allow consumers to mount collateral

attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims."); *see, e.g.*,

*DeAndrade*, 523 F.3d at 68 ("Whether the mortgage is valid turns on questions that can only be

resolved by a court of law, such as whether [the plaintiff] ratified the loan. This is not a factual

inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather a legal issue

that a credit agency such as [the defendant ] is neither qualified nor obligated to resolve under the

FCRA."); *Berkery*, 2019 WL 1958567, at \*5 ("The reinvestigation [the plaintiff] requests would

have required the consumer reporting agencies to decide whether Capital One was legally allowed

to unilaterally increase [the plaintiff's] minimum monthly payment. . . . [A]s a matter of fairness,

due process, and policy, it is difficult to imagine that resolving an issue such as the one

extant *should* be assigned to the consumer reporting agency.").

Duly considering Mr. LeBoon's *pro se* status, the Court gave him a final opportunity to

allege how the DS Waters trade line was *factually* inaccurate. Mr. LeBoon responded by attacking

the validity of the contract itself. Whether his contract with DS Waters is valid, however, is a legal

question that Equifax was under no obligation to investigate or resolve. Because Mr. LeBoon has

yet again failed to allege a factual inaccuracy, his Section 1681e(b) and 1681i claims are supported

---

evaluated in the context of his exhibits, his arguments reveal themselves to be rooted in issues of contract formation and enforceability, not factual dispute. And whether a contract was ever formed between Mr. LeBoon and DS Waters can primarily be determined through legal analysis, not factual investigation. Therefore, the issues presented here are legal in nature and distinguishable from purely fact-based contentions such as those in *Wylie*.

only by his own conclusory allegations and would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).[9] Mr. LeBoon has had three chances to fully plead his claims, and the Court gave him unambiguous notice that this would be his last. Therefore, the Court finds that Mr. LeBoon is not entitled to yet another chance to amend his Section 1681e(b) and 1681i claims.

## CONCLUSION

For the reasons set out in this Memorandum, the Court denies Mr. LeBoon's motion for leave to file a second amended complaint, Mr. LeBoon's motion to compel, and Mr. LeBoon's request to strike Equifax's response in opposition to his motion for leave to file a second amended complaint. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[9] As in his first amended complaint, Mr. LeBoon claims in his proposed second amended complaint that Equifax removed the DS Waters trade line from his credit report in June 2018 because it conceded that the trade line was inaccurate. *See* Proposed Second Am. Compl. ¶¶ 22–30, 38–39 (Doc. No. 29-1). However, again like his first amended complaint, none of the allegations in or exhibits to his proposed second amended complaint suggest that Equifax removed the DS Waters trade line because it was factually inaccurate. The fact that Equifax removed the DS Waters trade line cannot revive his Section 1681e(b) and 1681i claims.